# EXHIBIT 4

R. JOSEPH TROJAN

DYLAN C. DANG
FRANCIS Z. WONG
JOHN D. ROEHRICK
KEVIN R. DAVIS

# TROJAN LAW OFFICES

Rexford Plaza
9250 Wilshire Boulevard
Suite 325
Beverly Hills, California 90212
www.patenTrademark.com
REGISTERED PATENT ATTORNEYS

PATENT, TRADEMARK,
COPYRIGHT, TRADE SECRET &
RELATED CAUSES

TELEPHONE (310) 777-8399
FACSIMILE (310) 691-1086

July 14, 2020

Angelo J. Bufalino, Esq.
VedderPrice P.C.
222 N. LaSalle St.                    Via e-mail: ABufalino@VedderPrice.com
Chicago, Ill 60601

Re:    [NutriBullet, LLC]
Response to Accusation of Trade Dress
Infringement by Glanbia Performance Nutrition,
Inc. Concerning NutriBullet Supplements
TLO File No. 20-07-8668

Dear Mr. Bufalino:

We have been asked to respond to your June 9, 2020 letter to Mark Suzumoto at
Nutribullet, LLC. concerning your allegation of trade dress infringement.  We first note that
Glanbia Performance Nutrition ("Glanbia") has no Federal Trademark Registration for its
alleged trade dress.  This means that Glanbia is not entitled to the legal presumptions enjoyed by
Federal Trademark Registration holders under 15 U.S.C.  1057(b), including the presumption of
ownership, constructive notice, validity of the rights, and the presumption of national exclusive
rights for the goods or services listed in the registration.   Since you are not alleging that the trade
dress is federally registered, Glanbia must, by necessity, be alleging common law rights under 15
U.S.C. § 1125(a).

Under 15 U.S.C. § 1125(a), it is necessary for Glanbia to prove that it is the owner of
valid trademark rights in the trade dress.  Glanbia's conclusory assertion that the trade dress is
inherently distinctive is not enough. Glanbia must show that the elements of its trade dress are
not commonly used and not functional.  A trade dress cannot serve the fundamental purpose of
identifying a product with a single source of origin when it is composed of elements commonly
used by others in the industry or if the trade dress claims the shape of a container commonly used
in the industry.

Moreover, we do not agree that the alleged trade dress is inherently distinctive.   A
functional element cannot serve as trade dress.  *See Traffix Devices, Inc. v. Marketing Displays,
Inc.*, 532 U.S. 23 (2001).  While a collection of functional elements arranged in a particular

Angelo J. Bufalino, Esq.
VedderPrice P.C.
TLO File No. 20-07-8668
July 14, 2020
<u>Page 2 of 5</u>

manner may serve as trade dress, Glanbia bears the burden to show that its arrangement has acquired secondary meaning in the minds of consumers.  *See Clicks Billards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Circ. 2001).  It appears that the earliest use of the Glanbia's asserted trade dress was sometime between March, 2018 and April, 2019.  That is hardly enough time for secondary meaning to be acquired.

Against this legal backdrop, we must view the alleged trade dress in the proper commercial context.  To do this, we refer to two Internet links for powdered supplements in the market.  These two links will be referenced throughout our analysis:

First Search :  Protein Supplements.

https://www.google.com/search?q=protein+supplements&client=safari&rls=en&source=lnms&tbm=isch&sa=X&ved=2ahUKEwilsMCo9ffpAhUCOq0KHUuMCEQQ_AUoA3oECBYQBQ&biw=1876&bih=825

Second Search:  Powdered Vegan Supplements.

https://www.google.com/search?q=powdered+vegan+supplements&client=safari&rls=en&source=lnms&tbm=isch&sa=X&ved=2ahUKEwi466He9ffpAhUNP6wKHUpcAqMQ_AUoAnoECA4QBA&biw=1876&bih=825

We now apply the proper legal framework to each of the five elements of Glanbia's claimed trade dress in the context of the search results:

**(1)**     "**A white cylindrical tub**"

The First and Second Search both returned innumerable examples of white cylindrical tubs used as containers for powdered supplements.   This is both a functional feature that cannot serve as trade dress by itself and it is not distinctive because so many other players use this same element.  Hence, it is impossible for consumers to use this feature to identify a single source of origin.  It is common sense that consumers do not identify white cylindrical tubs exclusively with your client.

**(2)**     "**Bearing a label with a rectangular front panel having a background of a single color**"

The First and Second Search both returned innumerable examples of labels with a rectangular front panel having a background of a single color.  Hence, such a label cannot serve to identify any product coming from a single source. But even if Glanbia could establish trade dress rights in a rectangular front label, it would be irrelevant to the claim against Nutribullet because the NutriBullet label is NOT rectangular.   The NutriBullet label wraps around the entire container and stops right before reaching the front of the container where a gap is left for an

Angelo J. Bufalino, Esq.
VedderPrice P.C.
TLO File No. 20-07-8668
July 14, 2020
<u>Page 3 of 5</u>

image of vegetables and fruits.  Therefore, there would be no infringement of this element even if was established as an element of your client's trade dress.   The wrap around Nutribullet label is shown below:



**(3)**     "**A house mark and product name at the top of the front panel in white lettering**"

The First and Second Search both returned examples of house marks and product names printed in white letters.  We note that only one of Glanbia's labels in your cease and desist letter uses white lettering for the house mark.  Regardless, prominently displaying the house mark and the product trademark *dispels* confusion; it does not create confusion.  That is particularly true here where the "NUTRIBULLET" trademark is famous.

The bolded "NUTRIBULLET" name on the front of the package serves an essential function of informing consumers of who stands behind the supplement.  The Ninth Circuit has repeatedly held that the use of house marks reduces the chances of consumer confusion.  *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002)("The emphasis on these housemarks has the potential to reduce or eliminate likelihood of confusion."); *Norm Thompson Outfitters, Inc. v. Gen. Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where "the name of the company invariably accompanied the [trademarked] slogan"); *Murad, Inc. v. KaplanMD, Inc.*, No. 08-cv-6069-GAF, 2009 WL 10672037, at *6 (C.D. Cal. Mar. 27, 2009) ("The distinctive packaging of the products and the parties' use of

Angelo J. Bufalino, Esq.
VedderPrice P.C.
TLO File No. 20-07-8668
July 14, 2020
<u>Page 4 of 5</u>

their respective house marks minimizes the likelihood that consumers will confuse the two products."). Hence, this factor heavily cuts against your claim of infringement.

**(4)     "A side panel on the label next to the front panel that features images of vegetables and fruit"**

The First and Second Search both returned innumerable examples of fruits and vegetables used as a part of product labels.  Fruits and vegetables are commonly displayed because they serve the function of identifying the source of the ingredients in the supplement.  For this reason, no one company can claim the exclusive right to use such artwork because consumers do not rely upon such functional images to identify the source of the goods.  Rather, consumers use such images as a means to understand that the supplement in the container is derived from fruits and vegetables.

You have also indicated that the location of two vertical panels of the fruits and vegetables (along the two side edges of the label) is part of the trade dress.  Glanbia must prove that consumers associate these two side vertical panels exclusively with it.   To do so, Glanbia would need to commission a consumer survey to prove that this feature has acquired secondary meaning.  Even if Glanbia could prove that consumers associate the two flanking images of vegetation on *both sides* of the label exclusively with Glanbia, it would be meaningless because NutriBullet's label does not have such flanking images.  NutriBullet has a label that wraps around the entire container with a *single* vertical panel of an image of fruits and vegetables separating the two ends of the label.  Hence, NutriBullet's label is not flanked by two vertical panels of fruits and vegetables.  (See image in Section 2 above.)

The fact that the image of fruits and vegetables on the NutriBullet label are intended to identify the ingredients of the supplement powder has special status in the Lanham Act because the image serves to describe a quality or ingredient of the goods.  Such use is exempt from charges of infringement under 15 U.S.C. § 1115(b)(4), which provides, in relevant part, "That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, … of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party…".  Hence, NutriBullet's use of an image of fruits and vegetables as a device to describe its products cannot be the basis for a charge of infringement.  *See also, K.P. Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)(Ii is not defendant's burden to prove a lack of confusion when 15 U.S.C. § 1115(b)(4) is invoked.)

**(5)     "A listing on the lower portion of the front panel of the specific ingredient and nutrition claim information for that specific product"**

The listing of ingredient and nutrition information is purely functional.   Many brands, especially for protein supplements and nutritional supplements, list ingredients on the front of the label because consumers are buying supplements based upon the content of the products.   This

Angelo J. Bufalino, Esq.
VedderPrice P.C.
TLO File No. 20-07-8668
July 14, 2020
<u>Page 5 of 5</u>

is essential competitive information that consumers want to see on the front of the label.   The location of the information on the label does not serve a source identification function.   Hence, it cannot serve as trade dress under the Supreme Court's holding in *Traffix Devices, Inc., supra,* because it is purely functional.   The exemption provided by 15 U.S.C. § 1115(b)(4) discussed above also applies to the nutritional information label.

If Glanbia should ever obtain a registration for its trade dress, it cannot be used against NutriBullet because NutriBullet was using its trade dress before such a future registration issued. This exact scenario recently arose in the case of *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110 (Fed. Cir. 2018).  In *Converse, Inc.*, the Federal Circuit held:

> We conclude that Converse's registration confers a presumption of secondary meaning **beginning only as of the date of registration** and confers no presumption of secondary meaning before the date of registration.   Thus, with respect to infringement by those respondents whose first uses came before the registration…, Converse must establish without the benefit of the presumption that its mark had acquired secondary meaning before the first infringing use by each respondent. (emphasis added)

Lastly, NutriBullet disputes that the combination of the above elements constitute a protectable trade dress because they are all functional elements commonly used by many supplement brands, and Glanbia has failed to present a scintilla of evidence that secondary meaning has attached to the combination.

Based on the foregoing, NutriBullet will continue to use its trade dress because there is no reason to believe consumers are likely to be confused.

Very truly yours,

TROJAN LAW OFFICES
by

*R. Joseph Trojan*

R. Joseph Trojan

RJT:rjt
cc: Client