# EXHIBIT 5



Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
vedderprice.com

Angelo J. Bufalino
Shareholder, Intellectual Property Group
+1 312 609 7850
abufalino@vedderprice.com

September 30, 2020

**VIA E-MAIL**

R. Joseph Trojan
Trojan Law Offices
Rexford Plaza
9250 Wilshire Boulevard, Suite 325
Beverly Hills, CA  90212
trojan@patentrademark.com

Re:   Trade Dress Infringement - nutribullet, Our File No. 51003.01.0018

Dear Mr. Trojan:

This letter is in response to your correspondence of July 14, 2020 ("Your Correspondence") sent on behalf of your client, nutribullet.  We have reviewed Your Correspondence in detail and remain convinced that nutribullet's packaging for the Infringing Products infringes upon our client's Amazing Grass Trade Dress.  We write to correct the misstatements of law and mischaracterization of fact contained in Your Correspondence and reiterate our demand on behalf of Glanbia that your client revise its packaging for the Infringing Products.

Most significantly, Your Correspondence is entirely premised on your assertion that "[a] trade dress cannot serve the fundamental purpose of identifying a product with a single source of origin [1] when it is composed of elements commonly used by others in the industry or [2] if the trade dress claims the shape of a container commonly used in the industry" (emphasis added).  Each of these statements is directly contrary to well-settled federal law.

*First*, whether particular trade dress is inherently distinctive turns on its *total appearance*; it is irrelevant whether individual elements of the trade dress considered separately are functional or non-distinctive.[1]  As the Ninth Circuit has explained, "it is crucial that we focus not on the individual elements, but rather on the overall

---

[1] *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1050, 47 U.S.P.Q.2d 1332 (9th Cir. 1998) ("[T]he proper enquiry is not whether individual features of a product are functional or non-distinctive but whether the whole collection of features taken together are functional or nondistinctive.").

222 North LaSalle Street  |  Chicago, Illinois 60601  |  T +1 312 609 7500  |  F +1 312 609 5005

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, and Vedder Price Pte. Ltd., which operates in Singapore.

R. Joseph Trojan
September 30, 2020
Page 2

visual impression that the combination and arrangement of those elements create. Trade dress is the composite tapestry of visual effects."[2]

Your Correspondence utterly fails to consider the visual impression of the Amazing Grass Trade Dress as a whole, instead seeking to discuss each element of the trade dress individually. Such analysis is legally flawed, and your conclusion that the Amazing Grass Trade Dress somehow lacks inherent distinctiveness based on an element-by-element analysis is wholly without merit.

*Second*, trade dress which is inherently distinctive is protectable without a showing of acquired distinctiveness.[3] Your Correspondence asserts that "Glanbia bears the burden to show that its arrangement has acquired secondary meaning in the minds of consumers" and cites to *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) as support. That case is inapplicable, as the plaintiff in *Clicks Billiards* did *not* assert that its trade dress was inherently distinctive. *Id.* at 1251 n.1. Further, the Ninth Circuit expressly acknowledged in *Clicks Billiards* that inherently distinctive trade dress *is* protectable without secondary meaning.

*Third*, trade dress protection looks to the total image of a product's packaging, "including features such as size, shape, color, texture, and graphics."[4] It is thus irrelevant whether a single element of the trade dress is functional.[5] Indeed, when faced with this very issue, courts have held that trade dress including a container with a functional shape is still protectable. As explained by the District Court for the Central District of California,

> [E]ven if this Court assumes that [defendant] can establish with admissible evidence that the square bottle shape of the [plaintiff's] bottle is primarily functional, because it wastes less space in packaging so more cases of water can fit into a shipping container, [defendant's] claim does not defeat [plaintiff's] showing of non-functionality because it focuses on a single element, rather than "the overall visual impression" of the trade dress as a whole.[6]

The same holds here: even if the shape of the container that is part of the Amazing Grass Trade Dress were somehow functional or widely used for powdered

---

[2] *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).
[3] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992).
[4] *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2016).
[5] *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, "functional elements that are separately unprotectable can be protected together as part of a trade dress.").
[6] *Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1173 (C.D. Cal. 2010).

R. Joseph Trojan
September 30, 2020
Page 3

supplements (a conclusory assertion that Your Correspondence fails to support), the Amazing Grass Trade Dress *as a whole* remains enforceable.

*Fourth*, "evidence" is not required to establish the inherently distinctive nature of the Amazing Grass Trade Dress. "A trade dress is inherently distinctive if 'its intrinsic nature serves to identify a particular source of a product.'"[7] Unlike product design trade dress, trade dress constituting product packaging may be inherently distinctive—such product packaging trade dress is even registrable on the Principal Register without a showing of acquired distinctiveness.[8] Such is precisely the case here, where the Amazing Grass Trade Dress comprises a unique combination of elements that is non-functional and is immediately recognized as being source-indicative.

*Finally*, even if the analysis in Your Correspondence had correctly applied the law (which it does not), Your Correspondence is devoid of evidence to support its conclusory assertions. Your Correspondence references two searches run through the Google® search engine and claims that such searches "returned innumerable examples" of elements of the Amazing Grass Trade Dress used by third parties. We are surprised, then, that Your Correspondence fails to include even a single example of third-party packaging that you believe is similar to the Amazing Grass Trade Dress. This failure to present even a single example that would support nutribullet's position speaks volumes.

Tellingly, running the searches referenced in Your Correspondence returns results for a wide range of packaging styles (a significant number of which are for Glanbia's product lines sold under its mark Optimum Nutrition®), but <u>none</u> of which are similar to the Amazing Grass Trade Dress:

---

[7] *Paramount Farms Int'l LLC v. Keenan Farms Inc.*, No. 2:12-CV-01463-SVW-E, 2012 U.S. Dist. LEXIS 190634, 2012 WL5974169 at *5 (C.D. Cal. Nov. 28, 2012) (*quoting Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763 , 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)).
[8] TMEP § 1202.02(b)(ii) (2012).

R. Joseph Trojan
September 30, 2020
Page 4



https://www.google.com/search?q=protein+supplements



https://www.google.com/search?q=powdered+vegan+supplements

We therefore reiterate our request that you provide written assurances within ten (10) business days of the date of this letter that nutribullet has:

(1) ceased offering products for sale using the Infringing Packaging, including but not limited to the Infringing Product as well as any other products utilizing packaging that is confusingly similar to the Amazing Grass Trade Dress;

(2) ceased, and instructed anyone acting on nutribullet's behalf with respect to promotion or advertisement of the Infringing Product or related products to cease, utilizing any trade dress that is confusingly similar to the Amazing Grass Trade Dress in any manner that may cause confusion with our client or any of its brands or products (including recalling products from third parties where necessary);

(3) ceased, and instructed anyone acting on nutribullet's behalf with respect to promotion or advertisement of your products to cease, using the Infringing Packaging in any manner that may cause confusion with our client's Amazing Grass Trade Dress; and

(4) advised us of the total revenue that nutribullet has generated using the Infringing Packaging or any other packaging that is confusingly similar to our client's Amazing Grass Trade Dress.

While our client remains willing to vigorously pursue its claims in order to protect its valuable trade dress rights and avoid customer confusion, we believe it remains possible for the parties to reach an amicable resolution by which nutribullet revises its Infringing Packaging going forward. To that end, please let us know your availability for a call to discuss this matter.

We look forward to your immediate written response. This correspondence is without prejudice to the rights and remedies of Glanbia, all of which are expressly reserved.

Very truly yours,

Angelo J. Bufalino

AJB/jkb